UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
ANTONIO PICH,                                              :
                                    Plaintiff,             :
        -against-                                          :
                                                          :        REPORT AND
QUEENS GARDEN NURSERY INC. d/b/a                           :        RECOMMENDATION
Queens Garden Nursery and                                 :
LOUIS ZUCCARELLO,                                         :        22-CV-3362 (MKB)(MMH)
                                                          :
                                    Defendants.           :
------------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Antonio Pich brings this wage and hour action against Defendants Queens

Garden Nursery Inc. d/b/a Queens Garden Nursery (the "Nursery") and Louis Zuccarello

(collectively, the "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"),

29 U.S.C. §§ 201 *et seq.*, the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190 and

650 *et seq.*, and related regulations.  (*See generally* Compl., ECF No. 1.)[1]  Before the Court is

Plaintiff's second motion for default judgment pursuant to Federal Rule of Civil Procedure

55(b)(2) and Local Civil Rule 55.2(b).  (*See generally* Pl.'s 2d Mot., ECF No. 20.)[2]  The

Honorable Margo K. Brodie referred the motion for report and recommendation.  For the

reasons set forth below, the Court respectfully recommends that Plaintiff's second motion for

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the
ECF header unless otherwise noted.

[2] Plaintiff includes a notice of motion (Pl.'s 2d Mot., ECF No. 20); the declaration of Michael
Samuel, Esq., dated July 7, 2023 (Samuel Decl., ECF No. 21) and its eight supporting exhibits
(Samuel Decl. Exs. A–H, ECF Nos. 21-1 through 21-8); a memorandum of law dated July 7, 2023
(Pl.'s 2d Mem., ECF No. 23); and a proposed default judgment (ECF No. 23-1).

default judgment should be **denied** as to Zuccarello and **granted in part** as to the Nursery, with damages awarded as set forth herein.

## I.    BACKGROUND

### A.    Factual Allegations

The Complaint alleges the following facts, which are assumed to be true for the purposes of this motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC,* 779 F.3d 182, 187–90 (2d Cir. 2015).

Defendants owned and operated a nursery and landscaping company in Queens, New York. (Compl., ECF No. 1 ¶¶ 6, 18.) Zuccarello is an owner or part owner and principal of the Nursery who had the power to hire and fire employees, set wages and schedules, and maintain their records. (*Id.* ¶ 11.) From approximately July 2020 to July 12, 2021, Defendants employed Plaintiff as a driver, planter, and mower at the Nursery. (*Id.* ¶¶ 19–20.)

Plaintiff alleges that he regularly worked "six days per week, from 8:00 a.m. until 7:00 p.m., with Sunday off," resulting in a typical work week of approximately 66 hours per week. (*Id.* ¶¶ 23–24.) During Plaintiff's employment, Defendants paid Plaintiff $900 per week regardless of the number of hours he worked each week. (*Id.* ¶¶ 25–26.) Defendants did not provide Plaintiff with notices of pay rates and failed to provide weekly records of his compensation and hours worked. (*Id.* ¶¶ 29, 34–35.)

Throughout Plaintiff's employment, Defendants paid Plaintiff in cash. (*Id.* ¶ 29.) Additionally, Plaintiff was not paid for the last three weeks of his employment until several weeks after he was due to be paid. (*Id.* ¶ 30.) Plaintiff alleges that Defendants failed to pay him minimum wage, overtime pay, and spread of hours pay. (*Id.* ¶¶ 27, 31–33.)

### B.    Procedural History

Plaintiff initiated this action on June 7, 2022.  (*See id.*)  Plaintiff served the summons and Complaint on Defendants in June 2022.  (Affs. of Service, ECF Nos. 11–12.)  At Plaintiff's request, after Defendants failed to appear or otherwise respond to the Complaint, the Clerk of Court entered a notation of default on August 11, 2022.  (Entry of Default, ECF No. 14.)

Plaintiff initially moved for default judgment on November 10, 2022, seeking damages including unpaid wages, liquidated damages, prejudgment interest, and attorneys' fees.  (ECF Nos. 15–16.)  Judge Brodie referred the motion for report and recommendation.  (Apr. 6, 2023 Order.)  On June 23, 2023, the Court ordered Plaintiff to show cause why the first motion for default judgment should not be denied for failure to comply with the Local Civil Rules' requirements for default judgment motions.  (June 23, 2023 Order to Show Cause (citing Local Civil Rule 55.2(c) and collecting cases).)  Subsequently, Plaintiff withdrew the first motion for default judgment without prejudice and filed the instant motion on July 7, 2023, seeking the same relief.  (*See generally* Pl.'s 2d Mem., ECF No. 23.)  Judge Brodie referred the second motion for report and recommendation.  (July 11, 2023 Order.)

To date, Defendants have not appeared in this case or responded to Plaintiff's motion.

## II.    STANDARD FOR DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by

computation," the clerk can enter judgment. Fed. R. Civ. P. 55(b)(1). *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021). To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). The Court must draw all reasonable inferences in favor of the movant. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "a default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (cleaned up).

## III.    JURISDICTION AND VENUE

### A.    Subject Matter Jurisdiction

In accordance with 28 U.S.C. § 1331, the Court has original jurisdiction over Plaintiff's claims pursuant to the FLSA, 29 U.S.C. § 216(b). The Court may also exercise supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367(a) because they arise out of the same facts and circumstances as the FLSA claims. *Perez v. 50 Food Corp.*, No. 17-CV-7837 (AT)(BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), *adopted by* 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020). Accordingly, Plaintiff satisfies the requirements for subject matter jurisdiction.

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendant must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

The Court has personal jurisdiction over Defendants. *First*, Plaintiff properly served the Nursery by delivering copies of the Summons and Complaint at the Nursery located at 154-10 Cross Island Parkway, Whitestone, New York 11357 to a general agent authorized to accept service.  (Aff. of Service, ECF No. 12).  This method of service on a corporation complies with federal and state procedural rules. Fed. R. Civ. P. 4(h)(1)(A); N.Y. C.P.L.R. § 311(a)(1).  Plaintiff also properly served Zuccarello by delivering a copy of the Summons and Complaint via an employee located at the Nursery and by mailing a copy of process to Zuccarello at the Nursery.  (Aff. of Service, ECF No. 11).  These service methods follow federal and state rules for service on an individual.  Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2).

*Second*, "[t]he Court has general jurisdiction over Corporate Defendants, because they are New York corporations 'doing business' in New York." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301).  Similarly, though Plaintiff does not allege Zuccarello's

domicile, the Court would have general jurisdiction over him if he was domiciled in New York. *See Francis*, 2018 WL 4292171 at *3. If he was not, "a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under C.P.L.R. § 301, or specific jurisdiction, under C.P.L.R. § 302." *Weitsman v. Levesque*, No. 3:17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3 (N.D.N.Y. Jan. 11, 2019) (cleaned up). Zuccarello transacts business within the state and is "an owner or part owner and principal of Queens Garden Nursery" (Compl., ECF No. 1 ¶ 13), which sufficiently establishes specific jurisdiction. *Id.* Third, "[s]ince jurisdiction is proper for all Defendants under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis*, 2018 WL 4292171, at *3. Each defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

### C.    Venue

 "A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Venue is proper in this district because the failure to pay wages alleged in the Complaint occurred during Plaintiff's employment at the Nursery, a New York corporation with its registered business address in Queens, New York. (Compl., ECF No. 1 ¶ 5.)

### IV.    COMPLIANCE WITH LOCAL CIVIL RULES

In this district, the moving party must mail "all papers submitted to the Court" in support of the motion for default judgment "to the party against whom default judgment is sought" at the last known business address for corporations and the last known residence for

individuals. Loc. Civ. R. 55.2(c). This Court may deny a motion for default judgment if the moving party fails to adhere to mail the motion papers and file proof with the Court. *Tenemaza v. Eagle Masonry Corp.*, No. 20-CV-452 (AMD)(VMS), 2021 WL 8317120, at *3 (E.D.N.Y. July 22, 2021); *see D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 n.2 (2d Cir. 2006) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

Here, Plaintiff complied with Local Civil Rule 55.2(c) as to the Nursery by properly mailing the default judgment motion papers to the Nursery at its registered business address. (Pl.'s 2d Mem., ECF No. 23 at 14.) However, Plaintiff failed to comply with Local Civil Rule 55.2(c) regarding Zuccarello, to whom Plaintiff also mailed the motion papers at the Nursery's registered business address. (*Id.*) Plaintiff offers no evidence that the Nursery's address is also Zuccarello's last known residence. The failure to properly serve Zuccarello is especially glaring because "[t]his is the second chance [Plaintiff] had to serve the motion papers properly, and [he] has failed to do so." *Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544 (EK)(SJB), 2021 WL 4341103, at *2 (E.D.N.Y. June 23, 2021), *adopted by* 2021 WL 4340963 (E.D.N.Y. Sept. 23, 2021). Specifically, after Plaintiff's first default motion, the Court warned Plaintiff that failure to serve Zuccarello at his last known residence could be fatal to the motion. (June 23, 2023 Order to Show Cause.) Instead of correcting this issue, Plaintiff repeats the error in the instant motion.

Accordingly, the Court respectfully recommends denying Plaintiff's motion with respect to Zuccarello, and will consider the instant motion only with respect to the Nursery.

## V.    DEFAULT JUDGMENT FACTORS

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020).  Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiff's favor.  *First*, "the [Nursery's] non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct."  *See Tambriz v. Taste & Sabor, LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021).  *Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y Sept. 17, 2021).  *Third*, Plaintiff will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court."  *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (citation omitted), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).

Based on the foregoing, entry of default judgment is permissible.

## VI.    LIABILITY

### A.    Statute of Limitations

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (Nov. 30, 2023). In contrast, the NYLL establishes a six-year limitations period for wage claims. N.Y. Lab. Law §§ 198(3), 663(3). The statute of limitations begins to run when an employee begins to work for the employer. *Esquivel*, 2023 WL 6338666, at *5.

Plaintiff began working for the Nursery in approximately July 2020 and commenced this action on June 7, 2022. (Compl., ECF No. 1 ¶ 19.) In light of the Nursery's default, therefore, Plaintiff may recover under the FLSA and the NYLL for the entire period of his employment.

### B.    FLSA Coverage

To establish a minimum wage or overtime claim under FLSA, the "plaintiff must prove the following: (1) the defendant is an employer subject to [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of [the] FLSA; and (3) the employment relationship is not exempted from [the] FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH)(SJB), 2019 WL 8381264, at *6 (E.D.N.Y. Dec. 9, 2019) (cleaned up); 29 U.S.C. §§ 206(a) & 207(a).

### 1.    Employer Subject to the FLSA

The Complaint alleges that the Nursery was Plaintiff's employer within the meaning of the FLSA.  (Compl., ECF No. 1 ¶ 15.)  An employer includes, "any person [*e.g.*, an individual or a corporation] acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(a), (d).  "For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce."  *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022), *adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (E.D.N.Y. Sept. 23, 2022); 29 U.S.C. §§ 206, 207.  These two methods of establishing FLSA coverage are known as "enterprise coverage" and  "individual coverage,"  respectively.  *Sanchez v. Ms. Wine Shop, Inc.*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

The enterprise coverage test considers whether the employer has employees "engaged in commerce or in the production of goods for commerce," *i.e.*, it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done . . . not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL 1018791, at *6 (E.D.N.Y. Mar. 16, 2022), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).   Plaintiff closely follows the statutory language, alleging that, at all relevant times, Defendant "owns and operates a nursery and landscaping company," "has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the

meaning of the FLSA," "has had gross revenues in excess of $500,000.00," "has used goods and materials produced interstate commerce," and "has employed at least two individuals who handled such goods and materials."   (Compl., ECF No. 1 ¶¶ 6–10.)

"On default, a plaintiff's allegations are sufficient to subject a defendant to FLSA liability as long as one may reasonably infer that a business was an 'enterprise engaged in commerce.'" *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB), 2023 WL 2542702, at *5 (E.D.N.Y. Feb. 14, 2023) (quoting *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015)), *adopted by* Order Adopting R. & R., *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB) (E.D.N.Y. Mar. 16, 2023); *see also Castro v. Hyper Structure Corp.*, No. 21-CV-1391 (ENV)(JRC), 2022 WL 2467242, at *8 (E.D.N.Y. Mar. 7, 2022) (collecting cases); *cf. Ore v. H & C Cleaning Corp.*, No. 22-CV-20 (AMD)(RER), 2022 WL 19520879, at *8 (E.D.N.Y. Dec. 14, 2022) (cleaned up) (finding similar conclusory allegations that plaintiffs "handled cleaning materials that originated outside of New York" were enough to establish enterprise coverage), *adopted by* 2023 WL 2522814 (E.D.N.Y. Mar. 15, 2023).   *But see Salamanca v. ABC Corp.*, No. 19-CV-1334 (WFK)(SIL), 2021 WL 3275902, at *5 (E.D.N.Y. July 15, 2021), *adopted by* 2021 WL 3269089 (E.D.N.Y. July 30, 2021) (in default judgment motion, finding no enterprise coverage under the FLSA, but permitting NYLL claims to proceed) ("Vague allegations, which simply parrot the statutory requirements, to support a judgment would in effect render the interstate commerce element meaningless.").

"Here, although the Complaint does not specify what products moved through interstate commerce, the allegations are sufficient for the purposes of the FLSA as it is likely that at least some of the materials required to operate the [landscaping company] originated

from outside of New York." *Rodriguez v. Eden Rose, Corp.*, No. 22-CV-500 (ENV)(JRC), 2023 WL 2969311, at *7 (E.D.N.Y. Mar. 3, 2023).  For example, garden nurseries supply seeds, plants, shovels, and tools for landscaping and garden designs.  Further, landscaping work requires the use of lawnmowers and other motorized tools that use gasoline produced outside of New York State.  *Cf. Sandoval v. Materia Bros. Inc.*, No. 11-CIV-4250 (CS)(GAY), 2013 WL 1767748, at *1 (S.D.N.Y. Mar. 5, 2013), *adopted by* 2013 WL 1759581 (S.D.N.Y. Apr. 24, 2013) (awarding damages to laborer and driver of construction and landscaping company for failure to pay overtime).  Therefore, it is reasonable to infer that the Nursery's supplies and products would have originated outside of New York.[3]  Accordingly, Plaintiff's allegations are sufficient to establish FLSA enterprise coverage.[4]

## 2.    Employee Covered by the FLSA

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  "Two types of employees are covered: (1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'"  *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR)(RER), 2021

---

[3] Because the Court finds that Plaintiff satisfies the enterprise coverage standard, it does not address whether Plaintiff also satisfies the individual coverage test.

[4] Notwithstanding this recommendation, "[t]he preferred practice would be to provide specific facts as to each element of [Plaintiff's] claim."  *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411(ARR)(VMS), 2017 WL 835321, at *5 n.2 (E.D.N.Y. Feb. 14, 2017), *adopted by* 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017).  *See also Gaskin v. Brooklyn Suya Corp.*, No. 22-CV-5648 (ENV)(LB), 2023 WL 9232962, at *3 n.4 (E.D.N.Y. Oct. 26, 2023) ("It is not difficult to plausibly allege that a defendant is an enterprise engaged in commerce and therefore covered by the FLSA, yet plaintiffs nearly fail to do so. . . . In the future, the Court will not accept such conclusory allegations from plaintiffs' counsel, particularly when counsel could have easily alleged the nature of plaintiffs' jobs and defendant's business.").

WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021), *adopted by* 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021) (quoting 29 U.S.C. § 207(a)(1)). The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements. *See* 29 U.S.C. § 213(a)(1) (listing multiple exemptions). The FLSA maximum hour requirements also do not apply to "a driver or driver's helper making local deliveries, who is compensated for such employment on the basis of trip rates, or other delivery payment plan." *Id.* § 213(b)(11).

As discussed above, Plaintiff alleges that he was "an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations." (Compl., ECF No. 1 ¶ 22.) Plaintiff alleges that he was employed as a "driver, planter, and mower" at the Nursery, and the Complaint does not suggest that the driver role was paid by trip rates. (*Id.* ¶¶ 19–20.) Additionally, Plaintiff claims that his work "did not involve executive or administrative responsibilities" and that his "duties and responsibilities . . . did not include any managerial responsibilities or the exercise of independent judgment." (*Id.* ¶¶ 21, 36.) The Court does not find any basis for exempting the employment relationship at issue from the FLSA's provisions.

Accordingly, Plaintiff has shown that he is an employee within the meaning of the FLSA and qualifies for the protections of the FLSA.

### C.    NYLL Coverage

In order to plead a NYLL claim, Plaintiff "must establish that [the] employment relationship with [Defendant] falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'" *Perry*, 2022 WL 1018791, at *7 (quoting N.Y. Lab. Law § 190). "Under the [NYLL], the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve

a certain minimum in annual sales or business in order to be subject to the law." *Pelgrift v. 335 W. 41st Tavern Inc*., No. 14-CV-8934 (AJN), 2017 WL 4712482, at *7 (S.D.N.Y. Sept. 28, 2017) (citing N.Y. Lab. Law §§ 651(5)–(6) and *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014)).  Additionally, "[u]nder the NYLL, an employee-employer relationship is established through the degree of control exercised by the purported employer over the employee." *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *8 (E.D.N.Y. Mar. 24, 2022) (cleaned up).  The Court has already determined that the Nursery is Plaintiff's employer within the meaning of the FLSA.  (*See* § VI.B, *supra*.)  "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition . . . [Defendant] is Plaintiff's [employer] within the meaning of the NYLL" as well.  *Perry*, 2022 WL 1018791, at *7.  Accordingly, Plaintiff qualifies for the protections of the NYLL.

### D.    Statutory Violations

In the Complaint, Plaintiff alleges that the Nursery violated the FLSA and NYLL overtime provisions (Counts 2, 3) and the NYLL provisions related to minimum wages, spread of hours pay, wage notices, and wage statements (Counts 1, 4, and 5).  (*See* Compl., ECF No. 1 ¶¶ 40–66.)

### 1.    NYLL Minimum Wage (Count 1)[5]

Under the NYLL, employees must be paid the statutory minimum wage for each hour they work.  *Ms. Wine Shop*, 643 F. Supp. 3d at 370 (citing N.Y. Lab. Law § 652(1)).  An

---

[5] In conclusory fashion, the Complaint alleges that Defendant "failed to pay Plaintiff at a rate at least equal to the minimum wage, in violation of the FLSA and the New York Labor Law." (Compl., ECF No. 1 ¶ 38.)  However, the Complaint fails to include "a short and plain statement"

employee bringing an action for unpaid minimum wages under the NYLL has the burden of proving that he performed work for which he was not properly compensated. *Fermin*, 93 F. Supp. 3d at 41 (cleaned up). A plaintiff may sufficiently establish minimum wage violations through an affidavit or declaration stating the number of hours worked. *Brito*, 2022 WL 875099, at *10. When a defendant has defaulted, the Court may presume that the plaintiff's recollection of the hours he worked is accurate. *Zabrodin v. Silk 222, Inc.*, No. 22-CV-7064 (KAM)(MMH), 2023 WL 8009319, at *8 (E.D.N.Y. Nov. 20, 2023).

The Court will first establish the applicable minimum wage for Plaintiff's period of employment because he alleges that the Nursery failed to pay him "at a rate at least equal to the minimum wage." (Compl., ECF No. 1 ¶ 28.) Under New York law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of the plaintiff's employment. N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 142-2.1; *Eden Rose*, 2023 WL 2969311, at *9. Plaintiff alleges that he worked for the Nursery from approximately July 2020 to July 12, 2021 and that the Nursery employed at least two individuals during his employment. (Compl., ECF No. 1 ¶¶ 6, 10, 19.) During this period, the NYLL minimum wage was $15.00 per hour for employers of any size located in New York City. N.Y. Lab. Law § 652(1)(a)(i)–(ii); 12 N.Y.C.R.R. § 142-2.1(a)(1)(i)–(ii).

Next, "for the purposes of determining whether Plaintiff was paid the prevailing minimum wage, the Court must determine his regular hourly rate of pay." *Ms. Wine Shop*, 643 F. Supp. 3d at 371 (cleaned up). Under the NYLL, the regular hourly wage rate for non-

---

of the FLSA minimum wage claim as a cause of action. *See* Fed. R. Civ. P. 8(a)(2). The Court will therefore only consider Plaintiff's NYLL minimum wage claim.

hospitality industry employees paid on a weekly basis "shall be determined by dividing the total hours worked during the week into the employee's total earnings." 12 N.Y.C.R.R. § 142-2.16.  Plaintiff alleges that he regularly worked 66 hours weekly for the Nursery, which paid him $900 weekly, and that his "effective rate of pay was below the New York statutory minimum wage in effect" during his employment.  (Compl., ECF No. 1 ¶¶ 24–27.)  Therefore, Plaintiff's regular hourly wage rate was actually $13.64 ($900.00 per week divided by 66 hours).  In other words, for the entirety of Plaintiff's employment, Plaintiff's hourly pay rate was less than the applicable minimum wage rate of $15.00. N.Y. Lab. Law § 652(1)(a). Accordingly, the Court respectfully recommends that the Nursery should be liable for violating the NYLL minimum wage provision.

### 2.    FLSA and NYLL Overtime Wages (Counts 2, 3)

The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which [she or] he is employed.'"  *Dejesus v. HF Mgmt. Servs.*, *LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)).  The NYLL includes the same requirement, providing that eight hours constitutes a "legal day's work," N.Y. Lab. Law § 160.  For non-hospitality workers such as Plaintiff, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" for "working time over 40 hours each workweek."  12 N.Y.C.R.R. § 142-2.2. "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health Sys. of Long Island Inc*., 711 F.3d 106, 114 (2d Cir. 2013). "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work

to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Plaintiff sufficiently establishes that Defendant failed to pay him the requisite overtime pay. Plaintiff specifies that during his employment with Defendant, he "worked a regular schedule of six days per week, from 8:00 a.m. until 7:00 p.m." and, "[a]s a result, he was working approximately 66 hours per week during his employment." (Compl., ECF No. 1 ¶¶ 23–24.) Plaintiff further alleges his wages never varied "regardless of the exact number of hours he worked in a given week," and that the Nursery did not pay him "any overtime 'bonus' for hours worked beyond 40 hours in a workweek." (*Id.* ¶¶ 25–26, 31.) The Court therefore respectfully recommends that the Nursery should be liable for failure to pay overtime wages under both the FLSA and NYLL.

### 3.      NYLL Spread of Hours Pay (Count 4)

The NYLL regulations provide that, for non-hospitality workers, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate . . . for any day in which . . . the spread of hours exceeds 10 hours[.]" 12 N.Y.C.R.R. § 142-2.4. The "spread of hours" is the length of time between the beginning and end of an employee's workday, and includes working time plus time off for meals plus intervals off duty. *Id.* § 142-2.18. A plaintiff sufficiently establishes an employer's liability for failure to provide spread of hours pay when he alleges that he worked in excess of ten hours on a given day but did not receive spread of hours pay. *Ms. Wine Shop*, 643 F. Supp. 3d at 371. "A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff [may] not earn more than the minimum wage." *Fermin*, 93 F. Supp. 3d at 45 (cleaned up).

Plaintiff alleges that he worked eleven hours per day, six days a week, for which he did not receive spread-of-hours pay. (Compl., ECF No. 1 ¶¶ 23, 32.) The Court already established that Plaintiff did not earn more than the minimum wage. (*See* § VI.D.1., *supra*.) The Court thus respectfully recommends that, based on Plaintiff's undisputed allegations, the Nursery should also be liable under the NYLL for unpaid spread of hours pay.

### 4.  NYLL Wage Notice and Wage Statements (Count 5)

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, inter alia, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;" "the regular pay day designated by the employer;" and the employer's address and telephone number. N.Y. Lab. Law § 195-1(a). The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked." *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195-3).

"The Supreme Court recently held that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation." *Guthrie v. Rainbow Fencing Inc*., No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)), *adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023). "To establish [Article III] standing, a plaintiff must show (i) that he suffered

an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  To demonstrate an injury in fact, a plaintiff "must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical."  *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A*., 19 F.4th 58, 62 (2d Cir. 2021) (cleaned up).

Since *TransUnion* was decided, "[c]ourts in this Circuit have found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing."  *Guthrie*, 2022 WL 18999832, at *6 ("Plaintiff has not alleged that he suffered any harm or injury due to defendants' failure to provide wage notices or wage statements.") (collecting cases); *Sanchez v. Trescly*, No. 19-CV-4524 (KAM)(PK), 2023 WL 2473070, at *1 (E.D.N.Y. Mar. 13, 2023) ("Regarding Plaintiffs' NYLL § 195(1) wage notice claim and NYLL § 195(3) wage statement claim, however, the Court finds that Plaintiffs lack Article III standing to bring and obtain damages for these claims because Plaintiffs fail to allege actual and concrete injuries."); *Ramirez v. Urion Constr. LLC*, No. 22-CV-3342 (LGS), 2023 WL 3570639, at *8 (S.D.N.Y. May 19, 2023) ("While there are many decisions previously awarding plaintiffs for violations of the wage and notice requirements without examining standing, or in some cases even finding Article III standing, . . . they all precede [*TransUnion*]"); *see also Rivera Avila v. Velasquez Constr. Corp*., No. 22-CV-2606 (DG)(CLP), 2023 WL 5979180, at *7 (E.D.N.Y. June 30, 2023), *adopted by* Order Adopting R. & R., *Rivera Avila v. Velasquez Constr. Corp*., No. 22-CV-2606 (DG)(CLP) (E.D.N.Y. Aug. 17, 2023) (recommending denial of default and that plaintiff should be granted

leave to amend the pleadings to allege standing "given that the courts' rulings on standing and these provisions of the NYLL are fairly recent").

Conversely, when "[t]he gravamen of the complaint is that the denial of plaintiff's statutory right to these documents caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages, resulting in his underpayment," courts have ruled that plaintiffs sufficiently demonstrated "a tangible injury resulting from the violation" to establish Article III standing. *Stih v. Rockaway Farmers Mkt., Inc*., No. 22-CV-3228 (ARR)(RER), 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (plaintiff alleged that failure to provide him with proper wage notices injured him by "denying him the right to be adequately apprised of the terms and conditions of his employment," including allowances defendants purported to claim against his salary); *see also Cuchimaque v. A. Ochoa Concrete Corp*., No. 22-CV-6136 (RPK)(RML), 2023 WL 5152336, at *6 (E.D.N.Y. July 18, 2023), *adopted by* Order Adopting R. & R., *Cuchimaque v. A. Ochoa Concrete Corp*., No. 22-CV-6136 (RPK)(RML) (E.D.N.Y. Aug. 23, 2023) (plaintiff's affidavit in support of default judgment motion established Article III standing for NYLL wage notice claims where plaintiff alleged that "the breach of these obligations injured me by denying me the right to know the conditions of my compensation, resulting in the underpayment of wages").[6]

---

[6] *But see Bueno v. Buzinover*, No. 22-CV-2216 (PAE)(KHP), 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) ("Denying an employee such notices—as alleged here—can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay. The Court thus finds that, by alleging that they were not furnished the statutorily required notices, plaintiffs have asserted a concrete and particularized injury sufficient to confer standing for their [NYLL] wage notice and wage statement claims.").

Here, "[t]hough the deficiencies in [Defendant's] provisions of hiring notices may amount to violations of the labor law, neither Plaintiff nor the record demonstrates how those technical violations led to either a tangible injury or something akin to a traditional cause of action, as required by the Supreme Court." *Guthrie v. Rainbow Fencing Inc*., No. 21-CV-5929 (KAM)(RML), 2023 WL 2206568, at *6 (E.D.N.Y. Feb. 24, 2023).[7] Plaintiff alleges that "the Defendants failed to provide [him] with a written notice providing the information required by the [WTPA] – including, *inter alia*, the defendants' contact information, the regular and overtime rates, and intended allowances claimed," "failed to obtain [his] signature acknowledging the same, upon [his] hiring or at any time thereafter," "failed to provide Plaintiff with weekly records of his compensation and hours worked," and "failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA or [NYLL]." (Compl., ECF No. 1 ¶¶ 34–35, 39.) However, Plaintiff does not allege that these violations "resulted in an injury greater than [Defendant's] minimum wage, overtime, and spread-of-hours wage violations", nor does Plaintiff identify "an informational injury with consequences beyond this lawsuit." *Pastrana v. Mr. Taco LLC*, No. 18-CV-9374 (GBD)(SN), 2022 WL 16857111, at *7 (S.D.N.Y. Sept. 23, 2022), *adopted by* 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022). The Court thus finds that Plaintiff lacks standing to pursue claims or recover damages for any alleged violations of the NYLL's wage notice and wage statement provisions.

---

[7] Plaintiff Guthrie appealed that court's decision. *See* Appellant Br., *Guthrie v. Rainbow Fencing Inc*., No. 23-350, 2023 WL 3305691 (2d Cir. May 3, 2023).

## VII.  **DAMAGES**

As Defendant's liability has been established, the Court turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up).  "A plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'" *Gaskin*, 2023 WL 9232962, at *4 (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)).

"That being said, because under [the] FLSA 'the burden is on an employer properly to record hours,' a 'plaintiff need not compute FLSA damages with precision.'" *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (quoting *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002)), *adopted by* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).  "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at *15. Where a plaintiff has sufficiently established claims under the FLSA and NYLL, that plaintiff is "not entitled to recover under both FLSA and NYLL for [backpay] earned over the same period." *Lopez*, 2018 WL 1770660, at *10.  Rather, "[a] plaintiff may recover under the statute which provides the greatest amount of damages." *Brito*, 2022 WL 875099, at *9.  Because the NYLL provides greater or equal recovery than the FLSA at all relevant times during Plaintiff's employment with the Nursery, the Court will apply the NYLL for all damages calculations.

As described below, Plaintiff is seeking unpaid minimum wage, overtime, and spread of hours pay; liquidated damages; pre-judgment interest; attorneys' fees; and costs. (Pl.'s 2d Mem., ECF No. 23 at 8–13.)[8]

### A.    Minimum Wage

Plaintiff requests $4,821.43 for unpaid minimum wage damages.  (Pl.'s 2d Mem., ECF No. 23 at 9.)  The Court has already determined that Plaintiff was entitled to a minimum wage of $15.00 per hour during his employment and that his actual regular pay rate was $13.64 per hour.  (*See* § VI.D.1., *supra*.)

To calculate the minimum wage damages, the Court determines the difference between the plaintiff's regular rate of pay and the minimum wage ($1.36), multiplied by the number of regular rate hours worked per week (40), and multiplied by the number of weeks during the relevant time period (53.7)  (*i.e.*, (($15.00 – $13.64) x 40 regular hours per week) x 53.7 weeks).  Using this formula, the total unpaid minimum wage damages is $2,921.28.

In contrast, Plaintiff's calculations appear to incorrectly include the total number of hours he worked each week.  (*See* Samuel Decl. Ex. E, ECF No. 21-5 at 1–2 (damages calculation).)  For example, for the period between July 1, 2020 and December 30, 2020, Plaintiff calculates $2,340 in unpaid minimum wage as follows: (($15.00 – $13.64) x 66 total hours per week) x 26 weeks).  *Id.*  However, Plaintiff should have been paid his *regular* pay rate for 40 hours per week, and his *overtime* pay rate for any hours in excess of 40 per

---

[8] The Court will not address Plaintiff's request for damages for failure to provide wage notices and wage statements, in violation of the WTPA.

workweek.  N.Y. Lab. Law § 160; 12 N.Y.C.R.R. § 142-2.2.  This distinction renders Plaintiff's formula incorrect and the Court does not adopt it.

Therefore, the Court respectfully recommends that Plaintiff should be awarded **$2,921.28** for unpaid minimum wages.

### B.      Overtime Pay

Plaintiff also requests $31,339.29 for unpaid overtime compensation.  (Pl.'s 2d Mem., ECF No. 23 at 9.)

As noted, "[u]nder both the FLSA and NYLL, plaintiffs are entitled to overtime compensation of at least one and one-half times their regular hourly rate" for hours worked in excess of 40 hours per week.  *Brito*, 2022 WL 875099, at *16; *Dejesus*, 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.  "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'"  *Brito*, 2022 WL 875099, at *16 (quoting *Guardado v. 13 Wall St., Inc.*, No. 15-CV-02482 (DRH)(SIL), 2016 WL 7480358, at *10 (E.D.N.Y. Dec. 2, 2016), *adopted by* 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)).

Plaintiff is entitled to unpaid overtime at the rate of one and one-half times his regular rate of pay for hours worked in excess of 40 hours per workweek, or $22.50 per hour for those hours ($15 New York City minimum wage multiplied by 1.5).  *Dejesus*, 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.  From July 2020 until July 12, 2021, Plaintiff worked 66 hours per week and was paid $900 weekly for all hours worked, with no additional overtime pay.  (Samuel Decl. Ex. D, ECF No. 21-4 ¶¶ 10–11, 13 (Pich Decl.).)  The Court therefore calculates the difference between the applicable minimum wage ($15.00) and the

overtime hourly rate ($22.50), multiplied by the number of overtime hours worked per week (26), and multiplied by the number of weeks during the relevant time period (53.7) (*i.e.*, (($22.50 – $15.00) x 26 overtime hours per week) x 53.7 weeks). Applying this formula, the total unpaid overtime damages is $10,471.50.

Again, Plaintiff incorrectly calculates damages—this time, by applying the incorrect wage rate for the overtime damages calculation. For example, Plaintiff calculates the number of hours worked over 40 each week (26) by the overtime hourly rate ($22.50) by the number of weeks (53.7) (*i.e.*, ($22.50 x 26 overtime hours per week) x 53.7 weeks). (*See* Samuel Decl. Ex. E, ECF No. 21-5 at 1–2 (damages calculation).) This formula assumes that Plaintiff was never paid *any* amount each week, contrary to his sworn statements that he received $900 per week for all 66 hours worked. (Samuel Decl. Ex. D, ECF No. 21-4 ¶¶ 10–11 (Pich Decl.).) While Plaintiff was not paid any overtime premium pay for any hours worked over 40, he was paid at least his regular pay rate of $13.64 per hour. (§ VI.D.1., *supra*.) The Court thus declines to adopt Plaintiff's formula for overtime pay damages.

Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$10,471.50** in unpaid overtime wages.

### C.    Spread of Hours Pay

Plaintiff seeks $4,821.43 for unpaid spread of hours compensation. (Pl.'s 2d Mem., ECF No. 23 at 9.)

The NYLL spread-of-hours claim provides that an employee is entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours. *Perez v. E.P.E. Enter. Corp.*, No. 22-CV-6353 (DG)(RER), 2023 WL 7000934, at *5 (E.D.N.Y. Aug. 29, 2023), *adopted by* Order Adopting R. & R., *Perez v.*

*E.P.E. Enter. Corp.*, No. 22-CV-6353 (DG)(RER) (E.D.N.Y. Oct. 17, 2023); 12 N.Y.C.R.R. § 142-2.4(a).  Like the unpaid overtime pay, spread of hours damages are calculated based on the applicable minimum wage rates for the relevant time period.  *Esquivel*, 2023 WL 6338666, at *13.  Plaintiff alleges that between July 2020 and July 12, 2021, he worked 11 hours per day, six days a week and never received spread of hours pay for those days.  (*See* Samuel Decl. Ex. D, ECF No. 21-4 ¶¶ 10, 13 (Pich Decl.).)  Therefore, he is entitled to unpaid spread of hours pay for one hour per workday per week (*e.g.*, ($15.00 per hour x 6 days) x (53.7 weeks) = $4,833.00.  The Court rejects Plaintiff's requested spread of hours pay because the motion papers do not explain how that amount was calculated and the Court is unable to determine Plaintiff's formula from the statements in counsel's or Plaintiff's declarations. *See Gaskin*, 2023 WL 9232962, at *4 ("A plaintiff has the burden to prove damages to the Court with a reasonable certainty.") (cleaned up).

Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$4,833.00** in unpaid spread of hours premium pay.

### D.    Liquidated Damages

Plaintiff seeks $40,982.14 in liquidated damages, consisting of $4,821.43 in liquidated damages for unpaid minimum wages, $31,339.29 for liquidated damages in unpaid overtime compensation, and $4,821.43 spread of hours pay.[9]  (Pl.'s 2d Mem., ECF No. 23 at 9.)

 "Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount owed for unpaid overtime compensation, unless the employer proves a good

---

[9] Plaintiff requests $40,982.**14** in liquidated damages even though the sum of the unpaid minimum wage, overtime, and spread of hours damages he requests actually equals $40,982.**15**.

faith basis for believing that its underpayment of wages was in compliance with the law." *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 198(1-a)). "Plaintiff[] may not, however, recover 'duplicative liquidated damages for the same course of conduct' under both the FLSA and NYLL." *Pastrana*, 2022 WL 16857111, at *10 (quoting *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)). "In cases where plaintiffs could obtain liquidated damages under either FLSA [or] NYLL, the trend has been to award liquidated damages under whichever statute provides the greater potential recovery." *Payamps*, 2019 WL 8381264, at *13. Here, where the Nursery defaulted and therefore makes no showing that it acted in good faith when it underpaid Plaintiff, the greater liquidated damages available under the NYLL are appropriate. As noted, Plaintiff's calculated damages for unpaid minimum wage, overtime compensation, and spread of hours pay are incorrect. (§ VII.A.–C., *supra*.) Accordingly, using the corrected numbers, the Court respectfully recommends that Plaintiff should be awarded an additional **$18,225.78** in liquidated damages under the NYLL only, including $2,921.28 in unpaid minimum wages, $10,471.50 in unpaid overtime wages, and $4,833.00 in unpaid spread of hours pay.

### E.    Prejudgment Interest

Plaintiff seeks, as of January 5, 2021, prejudgment interest in the amount of $6,467.32. (Pl.'s 2d Mem., ECF No. 23 at 12–13.)

"It is well settled that in an action for violations of the FLSA prejudgment interest may not be awarded in addition to liquidated damages." *Fermin*, 93 F. Supp. 3d at 48 (cleaned up); *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988). In contrast, the NYLL enables a plaintiff to recover both liquidated damages and prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 48. Accordingly, Plaintiff is eligible to recover prejudgment interest

on compensatory damages for unpaid wages available under the NYLL at 9% per annum. *See id.* at 49–50; N.Y. C.P.L.R. § 5004; *Burns v. Scott*, 635 F. Supp. 3d 258, 282 (S.D.N.Y. 2022), *reconsideration denied*, No. 20-CV-10518 (JGK), 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022) ("Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages.") (citing *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS)(JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012)); *see also Avedana*, 2021 WL 4255361, at *12 (applying prejudgment interest rate to NYLL claims).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49. Courts generally calculate prejudgment interest in NYLL "from the midpoint date of the claims through the date judgment is entered" as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims." *Perry*, 2022 WL 1018791, at *13; *Pastrana*, 2022 WL 16857111, at *10; *Ms. Wine Shop*, 643 F. Supp. 3d at 380.

As discussed, the Court recommends that liquidated damages should be awarded under the NYLL in the amount of $18,225.78, and thus, pre-judgment interest may be awarded. (*See* § VII.D., *supra*.) For purposes of calculating prejudgment interest, the Court selects January 5, 2021 (the midpoint between Plaintiff's start date of employment (July 1, 2020) and Plaintiff's end date of employment (July 12, 2021)) as a reasonable intermediate date. Applying a nine percent per annum rate, the Court respectfully recommends that Plaintiff should be awarded **$5,123.09** in prejudgment interest from January 5, 2021 to February 20,

2024, the date of this Report and Recommendation.  This amount will increase by $4.49 per day until the entry of judgment.[10]

### F.    Attorneys' Fees

Plaintiff seeks compensation for $5,848.00 in attorneys' fee based on 13.4 hours of work.  (Samuel Decl., ECF No. 21 ¶ 16.)[11]

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions."  *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *adopted by* 2020 WL 2769266 (E.D.N.Y. May 28, 2020).  "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request."  *Perry*, 2022 WL 1018791, at *14.

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Esquivel*, 2023 WL 6338666, at *17. "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Id.*  "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to

---

[10] The Court calculates the daily prejudgment interest rate by multiplying the total amount of unpaid wages ($18,225.78) by 9%, then dividing by 365, for a daily rate of $4.49. The daily rate is then multiplied by the number of days between January 5, 2021 and February 20, 2024 (1,141 days).

[11]  Plaintiff's attorney time records format the duration of time billed as "hh:mm", *e.g.*, the notation "13:24" refers to 13 hours and 24 minutes (13.4 hours) of total time billed.  (*See generally* Samuel Decl. Ex. F, ECF No. 21-6 (attorney time summary).)

$100 for legal support staff in FLSA cases." *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 7684775, at *7 (E.D.N.Y. Oct. 12, 2023), *adopted by* 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours." *Id.* (cleaned up). "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD)(MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *adopted by* 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Plaintiff requests attorneys' fees based on a total of 13.4 hours, specifically: (1) 6.15 hours for Michael Samuel at an hourly rate of $450 because he has been licensed to practice in New York since 1993 and has litigated over 250 wage and hour cases; and (2) 7.25 hours for Andrew Beresin at an hourly rate of $400 because he was admitted to practice in 1992. (Samuel Decl., ECF No. 21 ¶ 13; Samuel Decl. Ex. F, ECF No. 21-6 (attorney time summary).)

As a threshold matter, the attorney time summary submitted with the motion appears inconsistent with the requested fees. For example, while Mr. Beresin requests an hourly rate of $400 per hour, the time records reflect that he billed at the rate of $425 per hour. (*See generally* Samuel Decl. Ex. F, ECF No. 21-6 (attorney time summary).) Further, it is unclear whether some of the activities stated in the records are attributable to Mr. Samuel or Mr. Beresin. Specifically, the September 6, 2022 time entry states the activity "Calculation of Damages" but does not identify which attorney performed the associated task. (*Id.*) Because

the entry appears to bill time at Mr. Beresin's requested rate of $425, the Court will attribute the 40 minutes billed in this entry to Mr. Beresin.

But even assuming these records were consistent, the Court recommends a reduced hourly rate for both attorneys. "Notwithstanding the fact that this case should be relatively straightforward," Plaintiff's first motion for default judgment was withdrawn because of its facial noncompliance with the Local Civil Rules and the instant motion papers "are littered with typos and inconsistencies." *Morales*, 2023 WL 7684775, at *8. The Court also notes a pattern of inactivity in this action absent Court orders and consistent misapplication of the Local Civil Rules. (*See, e.g.*, Oct. 6, 2022 Status Report Order (directing counsel to provide status update where there was no case activity for two months after the Clerk of Court entered default); Oct. 27, 2022 Order (directing a response after counsel ignored the October 6, 2022 Status Report Order); Nov. 23, 2022 Order (directing counsel to comply with the Local Civil Rules of this Court); June 23, 2023 Order to Show Cause (again directing counsel to comply with the Local Civil Rules of this district); Pl.'s Mot., ECF No. 20 (second default motion after the first motion had to be withdrawn or risk denial for failure to comply with the Local Civil Rules).) "Courts must use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Perry*, 2022 WL 1018791, at *14 (cleaned up). In light of the record in this case, Mr. Samuel's requested hourly rate of $450 is more appropriately reduced to $400. And while Mr. Beresin seeks $400

per hour, counsel offers no information regarding his practice experience in wage and hour matters. Instead, the Court finds that an hourly rate of $350 is reasonable.[12]

The Court further finds that the number of hours expended in this case is reasonable for Mr. Beresin but not Mr. Samuel. According to the submitted records, Mr. Beresin performed a variety of services, including speaking with Plaintiff, drafting and filing the Complaint, requesting the certificate of default, and drafting and filing the instant motion. (*See* Samuel Decl. Ex. F, ECF No. 21-6 (Billing Entries Nos. 2–3, 5–6, 8, 11–12).) Therefore, his requested 7.25 hours are reasonable. In contrast, three of Mr. Samuel's four time entries state the same action: "correspondence review." (*Id.* (Billing Entries Nos. 4, 7, 10).) This description is too vague for the Court to determine its reasonableness and is factually inconsistent with the posture of this case, where Defendants failed to appear or otherwise "correspond" with Plaintiff. *Perry*, 2022 WL 1018791, at *14; *contra Burns,* 635 F. Supp. 3d at 285 (recommending attorneys' fees for 13 hours of work for an FLSA default judgment case; attorney records clearly state services rendered). Therefore, Mr. Samuel should be awarded 1.3 hours for pre-filing "case assessment" activity indicated in the records, which is a reasonable expenditure of time for this single-plaintiff action. (Samuel Decl. Ex. F, ECF No. 21-6 (Billing Entries No. 1).)

Accordingly, the Court respectfully recommends an award of **$3,057.50** in attorneys' fees.[13]

---

[12] Given counsel's multiple errors in complying with the Local Civil Rules of this district and in calculating damages in the motion's supporting documents, this recommendation is still extremely generous only because the Court credits the overall favorable result for Plaintiff in this case.

[13] The total attorneys' fees are calculated as: ($400 x 1.3 hours) (Mr. Samuel) + ($350 x 7.25 hours) (Mr. Beresin) = $3,057.50.

### G.   Costs

Finally, Plaintiff seeks $527.50 in costs, including court filing and service of process fees.  (Pl.'s 2d Mem., ECF No. 23 at 12.)

Pursuant to both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Avedana*, 2021 WL 4255361, at *13.  Plaintiffs must provide sufficient documentary evidence to support an award of reasonable costs.  *Marine*, 2022 WL 17820084, at *11.  Further, the Court permissibly takes judicial notice of the docket notations for paid filing fees. *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023).  Here, Plaintiff is entitled to the filing fee for this case, as the docket reflects that Plaintiff paid the $402 filing fee.  (ECF No. 1 Dkt. Entry.)  Plaintiff also supports the request for process server fees with receipts reflecting $127.50 in costs incurred.  (*See* Samuel Decl. Exs. G–H, ECF Nos. 21-7 to  21-8.)

Therefore, the Court respectfully recommends that Plaintiff should be awarded a total of **$527.50** in costs.[14]

### H.   Post-Judgment Interest

Finally, Plaintiff did not specifically request post-judgment interest in the Complaint or in the default motion submission.  However, a plaintiff is "entitled to post-judgment interest on all civil money awards as a matter of right in federal court."  *Brito*, 2022 WL 875099, at *27.  "[T]he award of post-judgment interest is mandatory on awards in civil cases as of the

---

[14] Plaintiff's motion and exhibits reflect costs totaling $**529**.50 ($402 + $85 + $42.50 = $529.50) but the Court awards Plaintiff $**527**.50 as requested.  (*See* Pl.'s 2d Mem., ECF No. 23 at 12; Samuel Decl. Exs. G–H, ECF Nos. 21-7 to 21-8 (receipts for costs).)

date judgment is entered." *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961). Accordingly, the Court recommends that Plaintiff should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, the Court respectfully recommends that Plaintiff's second motion for default judgment at ECF No. 20 should be **denied** as to Defendant Louis Zuccarello and **granted in part** as to Defendant Queens Garden Nursery Inc. Specifically: (1) the Clerk of Court should enter the proposed default judgment (as amended)[15] against Defendant Queens Garden Nursery Inc. and (2) Plaintiff should be awarded damages in the amount of **$45,159.65** which includes: (a) $2,921.28 in unpaid minimum wage pay; (b) $10,471.50 in unpaid overtime wages; (c) $4,833.00 in unpaid spread of hours premium pay; (d) $18,225.78 in liquidated damages; (e) $5,123.09 in prejudgment interest to increase by $4.49 per day until the entry of judgment; (f) attorneys' fees of $3,057.50; (g) costs of $527.50; and (h) post-judgment interest at the rate set forth in 28 U.S.C. § 1961. All other requests for relief in Plaintiff's motion regarding Defendant Queens Garden Nursery Inc. should be **denied**.

A copy of this Report and Recommendation is being served on Plaintiff via ECF. The Clerk of the Court is respectfully directed to mail a copy of this Report and Recommendation

---

[15] The amendments to the proposed judgment at ECF No. 23-1 are: (1) in the caption, deleting the name "Louis Zuccarello"; and (2) in the last paragraph, revising the amounts of damages to be consistent with this Report and Recommendation.

to Defendant Queens Garden Nursery Inc. d/b/a Queens Garden Nursery at 154-10 Cross Island Parkway, Whitestone, New York, 11357.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Brodie.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).


**SO ORDERED.**


Brooklyn, New York
February 20, 2024

                                            /s/Marcia M. Henry
                                            MARCIA M. HENRY
                                            United States Magistrate Judge